## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ETP RIO RANCHO PARK, LLC**
an Arizona Limited Liability Company,
**FAC-ABQ, LLC**,
a New Mexico Limited Liability Company,
**JUNGLE JAM, LLC**,
a New Mexico Limited Liability Company, and
**DUKE CITY JUMP, LLC**,
a New Mexico Limited Liability Company,

       Plaintiffs,

v.                                                  Case No._____

**MICHELLE LUJAN GRISHAM**
in her official capacity as Governor of the
State of New Mexico,

**TRACIE C. COLLINS, M.D.,**
in her official capacity as Secretary-Designate
for the New Mexico Department of Health,

**TIM Q. JOHNSON**,
In his official capacity as Acting Cabinet Secretary
for the New Mexico Department of Public Safety

       Defendants.

## VERIFIED COMPLAINT FOR VIOLATION OF
## CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION
## AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

For their Verified Complaint against the Defendants, Plaintiffs, ETP Rio Rancho Park,

LLC, FAC-ABQ, LLC, Jungle Jam, LLC, and Duke City Jump, LLC state:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, ETP Rio Rancho Park, LLC ("Elevate"), is an Arizona limited liability

company duly registered with the New Mexico Secretary of State and authorized to conduct

business in New Mexico. Elevate currently does business in New Mexico as Elevate Trampoline Park in Rio Rancho, New Mexico.

2.     Plaintiff, FAC-ABQ, LLC ("Cool Springz") is a New Mexico limited liability company duly registered with the New Mexico Secretary of State and in good standing. FAC-ABQ currently does business as Cool Springz in Albuquerque, New Mexico.

3.     Plaintiff, Jungle Jam, LLC ("Jungle Jam") is a New Mexico limited liability company duly registered with the New Mexico Secretary of State and in good standing. Jungle Jam's principal place of business is located at 9227 Coors Boulevard, NW in Albuquerque, New Mexico.

4.     Plaintiff, Duke City Jump, LLC ("Duke City") is a New Mexico limited liability company duly registered with the New Mexico Secretary of State and in good standing. Duke City does business as Fallout Trampoline Arena, and its principal place of business is located in the Cottonwood Mall at 10000 Coors Bypass NW, Albuquerque, New Mexico.

5.     Defendant, Michelle Lujan Grisham is Governor of the State of New Mexico. She is sued in her official capacity.

6.     Defendant, Tracie C. Collins, M.D., is Secretary-Designate of the New Mexico Department of Health. She is sued in her official capacity.

7.     Defendant, Tim Q. Johnson, is the Acting Cabinet Secretary for the New Mexico Department of Public Safety. He is sued in his official capacity.

8.     At the time the claims alleged in this complaint arose, Defendants were each acting under color of law.

9.     The court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.

10.     The court has personal jurisdiction over the parties.

11.     Venue is proper in this court pursuant to 28 U.S.C. § 1391.

## NATURE OF THE CASE

12.     This case presents both facial and as applied constitutional challenges to the Public Health Orders ("PHOs") issued by the New Mexico Department of Health ("NMDOH"), pursuant to executive orders issued by Defendant Michelle Lujan Grisham as Governor of the state of New Mexico, and enforced by Defendant Tim Q. Johnson as Acting Secretary of the New Mexico Department of Public Safety through the New Mexico Department of Public Safety ("DPS"). More specifically, this case presents questions of whether:

(i) the PHOs issued by NMDOH are void for vagueness in violation of Plaintiffs' constitutional rights to due process;

(ii) whether the New Mexico Public Health Act, Section 24-1-3(E), pursuant to which the PHOs have been issued, is unconstitutionally overbroad and also void for vagueness in violation of Plaintiffs' constitutional rights to due process; and

(iii) whether Defendants' enforcement actions and threatened enforcement actions against the Plaintiffs for alleged violation of certain PHOs should be enjoined both during the pendency of this case and permanently.

## APPLICABLE FACTS

13.     Elevate operates a trampoline gym and business located at 3301 Southern Boulevard, S.E., Rio Rancho, New Mexico.

14.     Cool Springz operates a trampoline gym and business located at 5205 San Mateo Boulevard, N.E., Albuquerque, New Mexico.

15.      Jungle Jam built a trampoline gym and business located at 9227 Coors Boulevard, NW in Albuquerque, New Mexico.  Construction was completed on April 22, 2020, but due to the PHOs and Defendants' actions, Jungle Jam has been unable to open its trampoline gym and business.

16.      Duke City owns at trampoline gym and business in the Cottonwood Mall, located at 10000 Coors Bypass, Albuquerque, New Mexico.  Despite the fact that other businesses in the Cottonwood Mall are open, Duke City's trampoline gym and business remains closed.

17.      On or about June 5, 2020, the DPS issued a Notice of First Violation of Executive Order 2020-004, NM Department of Health Public Health Orders ("Notice of First Violation") and a "cease and desist" order to Elevate.  *See* Exhibit 1 hereto.

18.      On or about October 5, 2020, DPS issued a Notice of First Violation of Executive Order 2020-004, NM Department of Health Public Health Orders ("Notice of First Violation") and a "cease and desist" order to Cool Springz.  *See* Exhibit 2.

19.      Executive Order 2020-004, referenced in the Notices of First Violation, does not place any restrictions, obligations, or requirements on any private individual or entity.  *See* Exhibit 3.

20.      Private individuals or entities, like Plaintiffs, trying to understand an alleged violation of Executive Order 2020-004 would, therefore, be at a complete loss to know what they were claimed to have done wrong.

21.      The typed portions of the cease and desist orders issued to Elevate and Cool Springz, respectively, are identical, and state that these Plaintiffs are in violation of the PHO "issued by the New Mexico Department of Health ("NMDOH") on April 6, 2020, adopted pursuant to the Public Health Act (NMSA 1978, Section 24-1-1, et seq.) and the Public Health

4

Emergency Response Act (NMSA 1978, Section 12-10A-19 et seq.)." *Compare* Exhibit 1, at 2 and Exhibit 2, at 2.

22.     Both cease and desist orders require Elevate and Cool Springz to close their respective trampoline gyms and businesses.

23.     The April 6, 2020, Public Health Order referenced in the cease and desist orders required, in part, that "[a]ll businesses, except those entities identified as 'essential businesses', are hereby directed to reduce the in-person workforce at each business or business location by 100%. 'Essential businesses' may remain open provided they minimize their operations and staff to the greatest extent possible." Exhibit 4, April 6, 2020, PHO, at 3 – 6.

24.     None of the Plaintiffs meet the definition of an "Essential business" under the terms of the April 6, 2020, PHO (*see, id.*) or any other, subsequently issued PHO.

25.     Trampoline gyms, like Plaintiffs have never been listed in any of the definitions, including but not limited to, the "close contact recreational facility" definition set forth in the numerous PHOs issued by the NMDOH since March 19, 2020.

26.     Plaintiffs have, therefore, been left to guess whether they could or could not open under each new PHO.

### Elevate's Experience with the State

27.     The April 6, 2020, PHO was no longer in effect on June 5, 2020, when DPS issued the cease and desist order to Elevate. *See* Exhibit 5, PHO dated June 1, 2020, at 1, ¶2.

28.     Before the June 5, 2020, cease and desist order, the April 6, 2020, PHO was superseded by PHOs issued on April 11, April 30, May 5, May 15, May 27, and June 1, 2020. Each of these PHOs made changes to definitions in the respective orders and changed the restrictions on various businesses and activities.

5

29.     For example, the PHO issued on May 15, 2020, for the first time included definitions for "Close-contact business" and "Recreational facilities." *See* Exhibit 6, May 15, 2020, PHO, at 5.

30.     The May 15, 2020, PHO stated that a "'Close-contact business' includes barbershops, adult entertainment venues, hair salons, tattoo parlors, nail salons, spas, massage parlors, esthetician clinics, tanning salons, guided raft tours, guided balloon tours, *gyms and personal training services*." *Id*., at 5, ¶6 (emphasis added).

31.     The May 15, 2020, PHO also stated that "'Recreational facilities' include movie theaters, *swimming pools*, museums, *bowling alleys*, miniature golf, arcades, amusement parks, concert venues, performance venues, go-kart courses, indoor shopping malls, and other places of indoor recreation or indoor entertainment." *Id*., at 5, ¶7 (emphasis added).

32.     The May 15, 2020, PHO required that "Close-contact businesses" and "recreational facilities" remain closed. *Id*., at 6, ¶3.

33.     The May 15, 2020, PHO further provided, however, that

> Any business that is not identified as an 'essential business', a 'close-contact business', or a 'recreational facility' may open provided that the total number of persons situated within the business does not exceed 25% of the maximum capacity of any enclosed space on the business's premises, as determined by the relevant fire marshal or fire department.
>
> *Id*., at 6, ¶4.

34.     The requirement that a business "does not exceed 25% of the maximum capacity of *any enclosed space* on the business's premises" is vague. For example, if the maximum occupancy of an enclosed seating area is 100, but the maximum occupancy of an enclosed kitchen is 15, must the business limit occupancy to 15 or can it seat 25 patrons? No guidance is provided to businesses by the NMDOH or in the PHO.

35.     The PHO issued on June 1, 2020, was the order that was in effect at the time that the Notice of First Violation and cease and desist order were issued to Elevate on June 5, 2020. Exhibit 5 hereto.

36.     Contrary to the May 15, PHO, the June 1, 2020, PHO provided that "[g]yms and similar exercise facilities may operate at up to 50% of the maximum occupancy of any enclosed space on the business's premises, as determined by the relevant fire marshal or fire department, but may not conduct group fitness classes." *Id.*, at 7, ¶8.

37.     The June 1, 2020, PHO also removed swimming pools from the definition of "Recreational facilities". *Compare* Exhibit 5 (June 1 PHO), at 6, ¶7 and Exhibit 6 (May 15 PHO), at 5, ¶7.

38.     The June 1, 2020, PHO further provided that "[p]ublic swimming pools may open but such facilities are limited to lane-swimming and lessons with up to two students only.  Play and splash areas shall be closed.  Public swimming pools may not exceed 50% of their maximum capacity." Exhibit 5 at 7, ¶9.

39.     The June 1, 2020, PHO further provided that "[a]ny business not identified as an 'essential business' or a 'recreational facility' may open provided that the total number of persons situated within the business does not exceed 25% of the maximum occupancy of any enclosed space on the business's premises, as determined by the relevant fire marshal or fire department." *Id.*, at 7, ¶5.

40.     On September 16, 2020, officer Edward Smith of the New Mexico State Police issued a citation to Nicole Dos (sic – Bos), an employee of Elevate's trampoline gym business in Rio Rancho.  Officer Smith was ordered to issue the citation if the business was open.  He has testified that he did not understand or consider any distinctions under the PHOs between "close

contact business" and "close contact recreational facilities." He did not provide Elevate or Ms. Bos with a copy of any PHO.

41.     The citation alleges a violation of NMSA 1978, Section 24-01-21 for "Violation of Public Health Act." *See* Exhibit 7 hereto.

42.     The "Essential Facts" section of the citation states "[o]n 09/15/2020, the business was open and operating for the public in violation of the Public Health Order issued on 08/28/2020, Recreational Facilities were required to remain closed." *Id.*

43.     The citation is the first time that any state official claimed that Elevate was a "recreational facility" under a PHO.

44.     Elevate was given no prior notice of such a determination by Officer Smith, the NMDOH, or any other branch, department, or official of the State of New Mexico.

45.     Neither Elevate nor its employee, Ms. Bos, were given an opportunity to be heard before Officer Smith cited Elevate as a "recreational facility" and issued the citation. The citation issued to Ms. Bos was dismissed by the state without prejudice on January 12, 2021.

46.     Contrary to the citation, the PHO that was actually in effect as of September 16, 2020, was not the August 28, 2020 PHO, but rather, the PHO issued on September 3, 2020. *See* Exhibit 8, September 3, 2020, PHO.

47.     Even Officer Smith, an official charged with enforcing the PHOs, was either confused or mistaken as to which of the myriad of PHOs issued by the NMDOH was then in effect.

48.     The September 3, 2020, PHO includes a definition for "Close-contact recreational facilities." This definition first appeared in the July 30, 2020, PHO.

49.     "'Close-contact recreational facilities' are defined in the September 3, 2020, PHO to include indoor movie theaters, indoor museums with interactive displays or exhibits or other

similar venues [apparently museums without interactive displays or exhibits are different], bowling alleys, miniature golf, arcades, amusement parks, aquariums, casinos, concert venues, professional sports venues [apparently amateur sports venues are different], event venues, bars, dance clubs, performance venues, go-kart courses, automobile racetracks, adult entertainment venues, and other places of recreation or entertainment. Exhibit 8, September 3, 2020, PHO, at 5, ¶4.

50. The September 3, 2020, PHO continued to include "gyms" within the definition of "Close-contact businesses." *Id.*, at 5, ¶2.

51.     Swimming pools, which had been defined as a "Recreational facility" under the May 15, 2020, PHO, and then removed from that category in the June 1, 2020, PHO, are not mentioned in the September 3, 2020, PHO. *See,* Exhibit 8.

52.     The September 3, 2020, PHO provided that Close-contact businesses, which included gyms, "may operate at up to 25% of the maximum occupancy of any enclosed space on the business's premises, as determined by the relevant fire marshal or fire department." *Id.*, at 6, ¶3.

53.     Unlike gyms, "Close-contact recreational facilities" had to remain closed. *Id.*, ¶4.

54.     The September 3, 2020, PHO provides that "[a]ny business that is not identified as an 'essential business', 'close contact business', 'food and drink establishment', 'house of worship', 'close-contact recreational facility', 'outdoor recreational facility', or 'place of lodging' may open provided that the total number of persons situated within the business does not exceed 25% of the maximum occupancy of any enclosed space on the business' premises, as determined by the relevant fire marshal or fire department." *Id.* at 7, ¶9.

55.     On or about October 8, 2020, the NMDOH, acting through the DPS, issued a Notice of Contemplated Action to Elevate.  *See* Exhibit 9.

56.     The Notice of Contemplated Action states that the NMDOH has been notified that Elevate has operated in violation of the PHO dated September 18, 2020, which prohibits mass gatherings, and which requires the closure of close contact recreational facilities.  *Id.*

57.     The Notice of Contemplated Action attached a copy of the September 18, 2020, PHO.  See Exhibit 10, September 18, 2020, PHO.

58.     The September 18, 2020, PHO does not expressly include "trampoline parks" within the definition of "Close-contact recreational facility."  *Id.*, at 5.

59.     The September 18, 2020, PHO defines a "Close-contact business" as including "gyms, group fitness classes . . . bowling alleys, ice skating rinks and personal training services."  *Id.*, at 4.

60.     Bowling alleys had been previously defined as "Recreational facilities" (*see* Exhibit 5, June 1, 2020, PHO, at 6, ¶7) and, later as "Close-contact recreational facilities" (see Exhibit 8, September 3, 2020, PHO at 5, ¶4).  Under both definitions they were required to remain closed.

61.     Bowling alleys were redefined as a "Close-contact business" under the September 18, 2020, PHO, and were allowed to open, but were restricted to "league play" only.  *See* Exhibit 10 at 6.

62.     Ice skating rinks, included for the first time in the September 18, 2020, PHO, were allowed to operate for athletic training and practice by reservation only.  *Id.*

63.     Both bowling alleys and ice skating rinks were, therefore, not treated the same as other "Close-contact businesses" under the September 18, 2020, PHO

64.     Trampoline gyms are not mentioned anywhere within the definition of "close contact recreational facilities" but gyms, group fitness classes and personal trainers are specifically defined as a "close contact business" in the September 18, 2020, PHO.

65.     The Notice of Contemplated Action issued on October 8, 2020, states "[b]y this letter the Department gives notice that, pursuant to the Public Health Emergency Response Act ("PHERA") at NMSA 1978, §12-10A-19, the Department intends to impose on EPT Rio Rancho LLC doing business as Elevate Trampoline Park, a civil administrative penalty of $5,000 per day that the business has continued (and continues) to operating in violation of the Public Health Order."  Exhibit 9, at 1 – 2.

66.     The Notice of Contemplated Action further states that Elevate has operated "for at least three business days" and the Department would, therefore, assess a combined civil administrative penalty of $15,000.  *Id.*, at 2.

67.     The Notice of Contemplated Action further states that in accordance with 7.1.30 NMAC, Elevate may request an administrative evidentiary hearing to contest the proposed action. *Id.*

68.      Elevate did request an evidentiary hearing on the Notice of Contemplated Action. The hearing was held on January 25, 2021, almost four (4) months after the Notice of Contemplated Action was served, and past the deadlines required under NMAC 7.1.30.

69.     On January 5, 2021, the New Mexico Department of Health issued an Amended Notice of Contemplated Action.  *See* Exhibit 11, Amended Notice of Contemplated Action.

70.     The Amended Notice of Contemplated Action states that the Department is assessing a "combined civil administrative penalty of seven-hundred-and-fifteen-thousand dollars ($715,000.00)."  *Id.* at 2.

11

71.     Faced with the prospect of such a ruinous fine, Elevate was coerced and forced to close its facility in Rio Rancho, even though, at the time, it still had not had any hearing regarding the NMDOH's decision to classify it as a "Close-contact recreational facility."

72.     Between the October 8, 2020, Notice of Contemplated Action and the January 5, 2021, Amended Notice of Contemplated Action, the NMDOH issued PHOs on October 16, October 22, November 5, November 13, November 30, December 2, December 15, and December 30, once again changing definitions and restrictions imposed on various businesses.

73.     On January 22, 2021, the Friday before the January 25, 2021, administrative hearing, NMDOH identified an expert and stated that he would testify that trampoline parks are "close contact recreational facilities."  The expert did not so testify at the January 25, 2021, hearing.  Rather, he testified, under oath, that he was not aware of any study, peer reviewed or otherwise, that suggests trampoline gyms/businesses are at any higher risk of COVID-19 transmission than any of the businesses or activities described in the PHO definition of "close contact business" which includes gyms, group fitness classes, personal training services, massage parlors, barbershops, hair salons, tattoo parlors, nail salons, spas, esthetician clinics, tanning salons, guided balloon tours, bowling alleys, and ice skating rinks – all of which are allowed to operate.

74.     At the January 25, 2021, hearing, the NMDOH expert while under oath committed to "quickly" consider "putting trampoline companies in the same category as gym and fitness classes."

75.     NMDOH has now stated that such consideration has not occurred and no timetable as to when such consideration may occur, if ever, has been provided.

76.     Elevate's closure has put dozens of its employees out of a job and created significant financial distress for Elevate.  Each and every day Elevate is closed, is one day closer to it never opening again.

77.     A recommendation has not yet been issued by the Hearing Officer retained by NMDOH to hear Elevate's case.  After such a recommendation is issued, the Secretary of the NMDOH will then have up to sixty (60) days to provide Elevate with notice of her decision.

<div align="center">

**Cool Springz' Experience with the State**

</div>

78.     When the June 1, 2020, PHO permitted gyms and "similar exercise facilities" to open and operate at fifty percent (50%) of maximum occupancy, Cool Springz emailed Daniel Schlegel, the small business liaison for the Governor's office, on June 3, 2020, to confirm that Cool Springz could open.

79.     Mr. Schlegel responded on June 3, 2020, that Cool Springz could not open.

80.     Cool Springz followed up on June 4, June 5, and June 9, 2020, requesting, variously:

        a.   To see documentation supporting Mr. Schlegel's determination that Cool Springz could not open and the state's refusal to acknowledge Cool Springz as a gym or "similar exercise facility";

        b.  Requesting further information as to how Elevate had secured the ability to open;

        c.  Requesting the criteria used and documentation supporting the state's position that Cool Springz was not allowed to open.

81.     Cool Springz received a response on June 4 stating that the state was looking into the report that Elevate was open, but no response regarding its request for the criteria, documentation, or information upon which Cool Springz was not allowed to open was provided.

82.     On June 11, 2020, Cool Springz again contacted Mr. Schlegel by email and once again asked him for the criteria used and documentation supporting the state's position. Mr. Schlegel responded, asking Cool Springz if they would like to discuss the situation with someone in the "legal department." Cool Springz responded, saying "yes" they would like to speak to someone in the legal department. No further response was forthcoming from Mr. Schlegel or anyone else employed by the state.

83.     On June 27, 2020, Cool Springz sent yet another email to Mr. Schegel repeating their prior requests for information and documentation and noting that Elevate, Stone Age gym, and Pure Barre were all open, as was Empire Board Games. Mr. Schlegel did not respond.

84.     On June 30, 2020, and again on July 2, 2020, Cool Springz again asked Mr. Schlegel by email for the contact information for someone in the "legal department." There was no response to either email.

85.     On August 9, 2020, Cool Springz again contacted Mr. Schlegel by email regarding "fitness classes" which were permitted, under the then current PHO, and asking again for: i) documentation supporting the state's position that Cool Springz could not open; and ii) contact information for anyone that Cool Springz could discuss the matter with further. Cool Springz received an auto-response from Mr. Schlegel informing them that he would be out of the office until August 17, 2020. Cool Springz never received a response to its August 9, 2020, email.

86.     In September 2020, Cool Springz reconfigured its business location to emphasize strength training and cardio conditioning. It closed those parts of its facility that were "high touch" areas, like its rock climbing walls and laser tag. Cool Springz trained its staff in new procedures designed to comply with the state's COVID Safe Practices requirements.

87.     Cool Springz opened on September 23, 2020.

88.     On September 24, 2020, Cool Springz was visited by a Bernalillo County Sheriff's deputy, responding to a report that the business was open.  After touring the facility, the deputy stated that he believed that Cool Springz was operating within the requirements of the PHO and would be allowed to continue its business operations.

89.     On October 1, 2020, Mr. Michael Pittman from the Bernalillo County Environmental Health Department visited Cool Springz, toured the facility, and spoke with the owner about the protocols and COVID Safe Practices that Cool Springz had put in place.  Mr. Pittman agreed that Cool Springz was operating within the scope of the then current PHO and would be allowed to continue its business operations.

90.     On October 5, 2020, the New Mexico State Police, DPS, issued a Notice of First Violation and cease and desist order to Cool Springz.  *See* Exhibit 2.

91.     As with the cease and desist order issued to Elevate back on June 5, 2020, the cease and desist order issued to Cool Springz four months later, also stated that Cool Springz was in violation of the April 6, 2020, PHO.

92.     The April 6, 2020, PHO was no longer in effect on October 5, 2020, when the cease and desist order was issued to Cool Springz.  *See* Exhibit 10, PHO dated September 18, 2020.

93.     The PHO issued on September 18, 2020, was the order that was in effect at the time that Notice of First Violation and cease and desist order were issued to Cool Springz on October 5, 2020.

94.     The September 18, 2020, PHO provides that "Close-contact business includes, barbershops, hair salons, ***gyms, group fitness classes***, tattoo parlors, nail salons, spas, massage parlors, esthetician clinics, tanning salons, guided raft tours, guided balloon tours, ***bowling alleys***, ***ice skating rinks, and personal training services***."  *Id.*, at 4 (emphasis added).

95.     The September 18, 2020, PHO provided that "'Close-contact businesses may operate at up to 25% of the maximum capacity on the business's premises, as determined by the relevant fire marshal or fire department." Bowling alleys were allowed to open for league play only and ice skating rinks were allowed to operate for athletic training and practice by reservation only. *Id.*, at 6.

<div align="center">**Jungle Jam's Experience with the State**</div>

96.     Jungle Jam applied for and was granted an SBA loan on August 27, 2019.

97.     At about the same time, Jungle Jam signed a commercial lease and began to remodel/build out 25,000 square feet for use as a trampoline gym.

98.     In January 2020, Jungle Jam began interviewing potential employees, had made its final selections, and was finalizing its account with ADP payroll services when the COVID-19 pandemic began to become a concern.

99.     Jungle Jam was prepared to offer thirty-five (35) people employment at its new trampoline gym, when the Governor announced the first statewide lockdown.

100.    Jungle Jam decided at that point to take a "wait and see" approach to opening its business.

101.    Jungle Jam received a certificate of occupancy for its business on April 22, 2020, but was not allowed to open at that time because it did not meet the definition of an "essential business" under the then operative April 11, 2020, PHO.

102.    Because it was unable to open, and had not hired any employees, Jungle Jam was ineligible for any of the federal relief programs that applied to other businesses.

103.    Jungle Jam's SBA loan is currently deferred, although interest has accrued since September 2020, and continues to accrue.

104.   Since the first lockdown PHO, Jungle Jam has contacted the NMDOH numerous times to see what could be done so that they could open for business. To date, the NMDOH has taken the position that Jungle Jam is a "close-contact recreational facility" and is not allowed to open.

105.   The NMDOH has told Jungle Jam that even if they follow the COVID Safe Practices requirements published by the NMDOH they cannot open.

106.   When the NMDOH permitted gyms to open, Jungle Jam called the NMDOH and was told that they could not open.

107.   When the parks and playgrounds in the City of Albuquerque were allowed to reopen, Jungle Jam again called the NMDOH and was again told that they could not open.

108.   During the more than nine (9) months that Jungle Jam has not been allowed to open its business, it has incurred rent to its landlord in hundreds of thousands of dollars, interest on its SBA loan, which continues to accrue, and other expenses.

### Duke City's Experience with the State

109.   Duke City has been in operation since 2015 and leases approximately 8,000 square feet in the Cottonwood Mall located at 10000 Coors Bypass, N.W., Albuquerque, New Mexico.

110.   Prior to the state ordered lockdown, Duke City had 17 employees.

111.   Duke City closed in response to the first lockdown order from the state in March 2020. As a result of the lockdown, Duke City's 2020 revenue declined by at least 85% from prior years.

112.   Today, Duke City has no employees and has had no business income or revenue.

113. The May 15, 2020, PHO, for the first time defined "Recreational facility" which included "indoor shopping malls". *See* Exhibit 6, at 5, ¶7. Under the May 15, 2020, PHO recreational facilities were required to be closed. *Id.*, at 6, ¶3.

114. A little over two (2) weeks later, "indoor shopping malls" were removed from the definition of "Recreational facility" and were allowed to open and operate at 25% of capacity. *See* Exhibit 5, June 1, 2020, PHO, at 6, ¶7 and at 7, ¶5..

115. Despite the fact that other stores and businesses in Cottonwood Mall were permitted to open, Duke City was required to remain closed.

## Numerous, Vague, Inconsistent and Confusing PHOs and No Evidence that Trampoline Gyms Pose Any Threat

116. Since March 19, 2020, the Department of Health has issued twenty-five (25) PHOs that frequently, arbitrarily, and capriciously change the definitions and restrictions. This amounts to an new PHO approximately every two (2) weeks.

117. The numerous changes applicable to the Plaintiffs' businesses in this case are summarized in Exhibit 12 hereto.

118. On October 22, 2020, the New Mexico Department of Human Services responded to a public records request seeking:

> [R]ecords pertaining to all information in any form (emails, letters, complaints, questions, drafts, studies, recommendations, or reports) concerning COVID-19 related complaints, responses, reports, weekly reports, concerning the decision to close all trampoline business in New Mexico.

Exhibit 13, Email response from Denise DuBose, Paralegal/Legal Assistant Office of General Counsel, Human Services Department, dated October 22, 2020.

119. The public records request was

intended to identify any information about the decision to close including but not limited to:

1.    Any report of anyone contracting the virus or spreading the virus at any NM trampoline facility or any report of anyone contracting the virus and spreading the virus at any trampoline facility in the world.

2.    Any consideration of alternatives to (complete) closure of the trampoline facilities.

3.    Any consideration of the decisions made in the other 48 states to allow trampolining.

4.    Any weekly report to the Governor that mentions trampoline facilities or trampolines including 'trends', strategies for containment or ending the closure order, or testing goals

5.    Any consideration of the damage (financial, physical health, mental health) that will or may be caused by the closure.

6.    Any consultation with any New Mexican in the trampoline business.

7.    Criteria necessary to end trampoline prohibitions.

*Id.*

120.    The New Mexico Human Services Department's response to this records request was "[f]ollowing HSD's review, we do not have any Responsive documents specified in your IPRA request.  With this production, HSD is now closing its IPRA production for this matter, IPRA 2020-148." *Id.*

121.    The New Mexico Governor's office received the same public records request and provided no records of anyone contracting or spreading the virus at any trampoline facility in New Mexico, the United States, or the world.  No alternative to complete closure were considered. The decision in all other states to allow trampolining was not considered.  The Governor's weekly review and study of trends, containment, testing goals or ending the state's closure of certain businesses has not included any consideration of trampoline gyms.  The Governor's office has no documents indicating any consideration of the damage (financial, physical health, or mental health) that is caused by the closures and has no documents identifying any criteria that would allow the closures to end.

## COUNT I
## VIOLATION OF PLAINTIFFS' RIGHTS
## TO SUBSTANTIVE DUE PROCESS

121.    Defendants assert the cease and desist order issued to Elevate on June 5, 2020, the citation issued to Elevate's manager on September 16, 2020, the Notice of Contemplated Action issued to Elevate on October 8, 2020, the Amended Notice of Contemplated Action issued to Elevate on January 5, 2021, and the cease and desist order issued to Cool Springz on October 5, 2020, (hereafter collectively, the "Edicts") all have the force of law.

122.    The Edicts each demand or require that Plaintiffs cease their respective operations and close their trampoline gyms.

123.    The Defendants assert that the PHOs issued by the NMDOH have the force of law.

124.    Each PHO issued by the NMDOH contains the following statement

> WHEREAS, the New Mexico Department of Health possesses legal authority pursuant to the Public Health Act, NMSA 1978, Sections 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, Sections 12-10A-1 to -10, the Department of Health Act, NMSA 1978, Sections 9-7-1 to -18, and inherent constitutional police powers of the New Mexico state government, to preserve and promote public health and safety, to adopt isolation and quarantine, and to close public places and forbid gatherings of people when deemed necessary by the Department for the protection of public health.

*See, e.g.*, Exhibit 4, April 6, 2020, PHO, at 2.

125.    Of the legal authority listed in each PHO, only Section 24-1-3E, NMSA 1978 grants the NMDOH express authority to close public places and forbid gatherings of people.

126.    Section 24-1-3E, NMSA 1978 permits the Secretary to "close any public place . . . for the protection of the public health."

127.    The determination of what constitutes the "public health" and how it is to be protected is so vague, however, that persons of common intelligence must necessarily guess at the meaning of the statute, and will differ with respect to its application.

128.    Defendants themselves have demonstrated that they are, at best, "guessing" by issuing twenty-five (25) PHOs that seek to regulate or otherwise restrict Plaintiffs' respective businesses since March 19, 2020.

129.    In New Mexico, a statute that permits a state officer or agency to suspend business operations where "the public health, safety or welfare requires emergency action . . ." is unconstitutionally vague. *See Chronis v. State ex rel. Rodriguez*, 1983-NMSC-081, ¶¶ 16 and 19, 100 N.M. 342, 346 -7.

130.    Section 24-1-3E provides no standard by which the NMDOH is to determine whether a particular event or circumstance threatens the "public health".

131.    Section 24-1-3E is so vague that it invites arbitrary enforcement, as amply demonstrated by the facts alleged above.

132.    Section 24-1-3E is void for vagueness and unconstitutional on its face.

133.    Section 24-1-3E is also unconstitutionally overbroad in that the undefined, and unrestricted grant of authority for the "protection of the public health," sweeps many lawful activities within its scope.  For example, citing to medical studies related to the danger of concussions, the NMDOH could prohibit public gatherings, and close stadiums and arenas, for the purposes of playing football, soccer, or hockey.  By relying on studies that find a negative psychological impact arising from playing video games, the NMDOH could close any store that sells, lends, or rents such games, claiming that their action is necessary for the "protection of the public health."

134.    By changing the definitions, restrictions, obligations, and requirements on New Mexico businesses on an almost bi-weekly basis, the PHOs are so vague that persons of common intelligence must necessarily guess as to their meanings and will differ with respect to their applications.

135.    The PHOs issued by the NMDOH have all been promulgated, modified, and amended without any public participation or comment.

136.    To the extent that the PHOs purport to close any public place or forbid gatherings of people, based on an unconstitutionally vague statute, they violate substantive due process and are void and without effect.

137.    The PHOs as applied, violate the Plaintiffs' respective liberty interests to run their businesses free from unconstitutional government interference and Plaintiffs' respective rights to substantive due process.

138.    Section 24-1-3E, and the PHOs issued in reliance on this statute, deprive the Plaintiffs and other citizens of the New Mexico of their Constitutional right to substantive due process under the Fifth and Fourteenth Amendments to the United States' Constitution.

<div align="center">

**COUNT II**
**VIOLATION OF PLAINTIFFS'**
**RIGHTS TO PROCEDURAL DUE PROCESS**

</div>

139.    The PHOs, as implemented by the NMDOH, deprive Plaintiffs and other New Mexico businesses of their liberty interest in operating their businesses free from unconstitutional government interference.

140.    Each of the PHOs has been drafted and promulgated without any public comment, hearing, or input of any kind.

141.    As a result, Plaintiffs and all other New Mexico businesses do not receive any pre-deprivation due process before the PHOs are issued.

142.    Although the state has provided for an administrative hearing, the procedure is wholly inadequate to the needs of Plaintiffs and other New Mexico businesses. *See* Exhibit 14, NMAC Section 7.1.30 (the "Regulation").

143.    Under the Regulation, a final decision need not be mailed to an appellant business for up to 175 days after the Notice of Contemplated Action has been issued.

144.    Plaintiff, Elevate, for example, was informed of the NMDOH's Notice Contemplated Action on October 8, 2020.  The Secretary of Health's written decision need not be mailed, therefore, until March 30, 2021.

145.    A hearing on the action against Elevate was held on January 25, 2021, almost four months after the Notice of Contemplated Action was issued and beyond the time limits set forth in the Regulation.

146.    The NMDOH has coerced Elevate into closing its business by stating that it planned to assess a ruinous fine in the amount of $715,000.00, unless Elevate closed pending the hearing.

147.    Every day that Plaintiffs' respective businesses remain closed, is a day closer to them never re-opening.

148.    While Plaintiffs' respective businesses are closed, their employees are unemployed and Plaintiffs struggle to pay their rent and other bills without any income from the operation of their businesses.

149.    The ability of a business to sustain itself during a closure will vary depending on the assets and resources that the business has if it must remain closed.

150.    The procedure provided by the state of New Mexico does not require nor allow for an expedited hearing on any Notice of Contemplated Action issued by the NMDOH.

151.    Under the state's procedure, therefore, the Department has every incentive to extend and delay a hearing so long as the business remains closed.

152.    The procedure provided by the state of New Mexico fails to minimize substantively unfair or mistaken deprivations of Plaintiffs' and other business's liberty interest.

153.    In Elevate's case, for example, even if the hearing officer determines that Elevate has been mistakenly categorized as a "Close-contact recreational facility" and, in fact, should have been permitted to operate during the pendency of the proceeding, such a ruling may be too late to permit them to financially survive.

154.    In order to protect Plaintiffs and similarly situated business's rights to due process, Plaintiffs should either be permitted to remain open during the pendency of an appeal of a Notice of Contemplated Action, or the state should provide for an expedited hearing and determination of any such appeal.

155.    Plaintiffs have been deprived of the right to operate their respective businesses and Plaintiffs and all similarly situated New Mexico residents have been deprived of their respective constitutional rights to procedural due process.

### COUNT III
### VIOLATION OF PLAINTIFFS'
### RIGHTS TO EQUAL PROTECTION

156.    Plaintiffs have a right to equal protection under the Fifth and Fourteenth Amendments to the United States' Constitution.

157.    Plaintiffs have been treated differently than other, similarly situated businesses, to include bowling alleys and gyms.

158.    There is no better demonstration of the arbitrary discrimination practiced by the NMDOH under the PHOs than the June 30, 2020, PHO.  This PHO changed the definition of "Recreational facilities", so that it reads

> "'Recreational facilities' include indoor movie theaters, museums, bowling alleys, miniature golf, arcades, amusement parks, concert venues, event venues, performance venues, go-kart courses, adult entertainment venues, and other places of indoor recreation or indoor entertainment. ***Recreational facilities do not include those venues being utilized for governmental functions.***

Exhibit 15, at 6, ¶7.

159.    The PHOs issued before June 30, 2020, did not include the last sentence emphasized above.

160.    The June 30, 2020, PHO required that "'Recreational facilities must remain closed." *Id.*, at 7, ¶4.  But the definition was modified so that the closure requirement did not apply to "governmental functions" and is not limited to any essential or even job-related activity. Presumably, therefore, such functions would include employee appreciation days, parties, or other events scheduled for government employees.

161.    The PHOs as interpreted by the NMDOH have impermissibly infringed on the Plaintiffs' respective liberty interests.

162.    As demonstrated by the "governmental function" exception in the June 30, 2020, PHO, and in the treatment of other similar businesses like gyms, skating rinks, bowling alleys, and swimming pools, the Defendant's actions are not necessary to serve a compelling government interest with respect to the Plaintiffs' trampoline gyms.

163.    Plaintiffs have, therefore, been denied their respective constitutional rights to equal protection under the law.

## COUNT IV
## REQUEST FOR INJUNCTIVE RELIEF

164.    As a result of Defendants' actions, Plaintiffs are presently and continuously suffering injury in the form of a violation of their respective rights to liberty, equal protection, and substantive and procedural due process under the Fifth and Fourteenth Amendments to the Constitution.

165.    Plaintiffs request both preliminary and permanent injunctive relief to prohibit and prevent Defendants from enforcing all PHOs that rely on the unconstitutionally overbroad and vague authority granted under Section 24-1-3E, NMSA 1978.

166.    Plaintiffs request both preliminary and permanent injunctive relief to prohibit and prevent Defendants from enforcing the unconstitutionally vague PHOs.

167.    Plaintiffs have no adequate and complete remedy at law.

168.    Plaintiffs are substantially likely to prevail on the merits of their claims.

169.    Issuance of preliminary and permanent injunctive relief is not contrary to the public interest as is demonstrated by the fact that Defendants are allowing similarly situated businesses to operate while insisting that Plaintiffs remain closed.

170.    If not enjoined by this Court, Defendants will continue to coerce Plaintiffs to remain closed, thereby depriving Plaintiffs and all similarly situated persons within the state of New Mexico of their constitutionally protected rights.

171.    Plaintiffs have no plain, speedy, or adequate remedy at law.  Their respective damages arising from the closure of their separate businesses are indeterminate or unascertainable, and in any event, would not fully redress the harm being suffered by Plaintiffs because they are unable to fully engage in their lawful businesses.  Defendants have also taken the position that no

compensation is owed to the Plaintiffs or any other business as a result of PHOs closing any business.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, holding that:

A.      Section 24-1-3E, NMSA 1978 violates the Plaintiff's respective rights to substantive due process both on its face and as applied to Plaintiffs and is, therefore, void;

B.      The PHOs issued by the New Mexico Department of Health violate the Plaintiffs' respective rights to substantive due process both on their face and as applied to Plaintiffs and are, therefore, void;

C.      NMAC 7.1.30 violates the constitutional right to procedural due process both on its face and as applied to Plaintiff, Elevate, and is, therefore, void.

D.      Plaintiffs are entitled to preliminary injunctive relief, staying enforcement of the current prohibition against operations until such time as this case is finally decided;

E.      Plaintiffs are entitled to permanent injunctive relief;

F.      Plaintiffs are entitled to an award their costs and reasonable attorney's fees incurred in this action;

Plaintiffs further respectfully request an award of such other and further relief as the Court deems just and proper.

<div style="margin-left: 40%;">

PATRICK J. ROGERS, LLC
Patrick J. Rogers
20 First Plaza Center, NW, Suite 725
Albuquerque, NM 87102
(505) 938-3335
patrogers@patrogerslaw.com

                and

</div>

27

LAW OFFICE OF ANGELO J. ARTUSO

By:   /s/ Angelo J. Artuso
    Angelo J. Artuso
    P.O. Box 51763
    Albuquerque, NM 87181-1763
    (505) 306.5063
    angelo@nmliberty.com

    **Attorneys for Plaintiffs**

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is the managing member for Plaintiff, ETP Rio Rancho Park, LLC, in the above action, that she has read the Complaint and that the information contained therein is true and correct.  28 U.S.C. §1746.  18 U.S.C. §1621.

Executed at _Albuquerque_, _New Mexico_ on February 2ᴺᴰ, 2021.

Amanda Williams

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is the managing member for Plaintiff, FAC-ABQ, LLC, in the above action, that she has read the Complaint and that the information contained therein is true and correct.  28 U.S.C. §1746.  18 U.S.C. §1621.


Executed at Albuquerque, New Mexico on February 3, 2021.


Tamara Portnoy

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the managing member for Plaintiff, Jungle Jam, LLC, in the above action, that he has read the Complaint and that the information contained therein is true and correct. 28 U.S.C. §1746. 18 U.S.C. §1621.

Executed at _Rio Rancho_, _New Mexico_ on February _3_, 2021.

JD Lopez

31

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the managing member for Plaintiff, Duke City Jump, LLC in the above action, that he has read the Complaint and that the information contained therein is true and correct. 28 U.S.C. §1746. 18 U.S.C. §1621.

Executed at _9227 Vintner dr_, _Albuquergueque NM_ on February _3_, 2021.

Troy Brown

32